UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LINDA TOWNSEND-JOHNSON,

      Plaintiff,

      v.                               Cr. No. 10-257 JCH/DHS

RIO RANCHO PUBLIC SCHOOLS,
SUPERINTENDENT SUE CLEVELAND,
ASSISTANT SUPERINTENDENT CARL LEPPELMAN,
in their official and individual capacities,

      Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

      This matter comes before the Court on the individual Defendants' *Motion to Dismiss on Qualified Immunity Grounds* (Doc. 14).  Plaintiff Linda Townsend-Johnson accuses Defendant Rio Rancho Public Schools ("RRPS") and individual Defendants, RRPS Superintendent Sue Cleveland and RRPS Assistant Superintendent Carl Leppelman, of breach of contract, race discrimination, retaliation, and violations of the First Amendment and Fourteenth Amendment due process and equal protection clauses of the United States Constitution, in connection with the non-renewal of her employment contract as Principal of Puesta Del Sol Elementary School. On the instant motion, Defendants Cleveland and Leppelman argue that four of the six counts against them in the Complaint should be dismissed with prejudice on the basis of Federal Rule of Civil Procedure 12(b)(6) and the doctrine of qualified immunity.[1]  The Court, having considered the Complaint, motion, briefs, and the relevant law, and being otherwise fully informed, finds that the individual Defendants' motion should be granted in part and denied in part.

---

      [1]The individual Defendants do not move to dismiss Plaintiff's Count I for breach of contract or Count VI for retaliation.

**FACTUAL BACKGROUND**

Plaintiff, an African American female, was hired in August 2006 to serve as Principal of Puesta Del Sol Elementary School, a school in the Rio Rancho Public School District ("RRPS"). Plaintiff's employment contract was valid for one academic year, from 2006-2007.  Plaintiff alleges that unlike other principals of the district, who began working the week of July 20, 2006, she commenced her new position two-and-a-half weeks later, on August 7, 2006.  It is unclear why Plaintiff started her job later.

On or about November 10, 2006, Plaintiff had a one-on-one meeting with Defendant Carl Leppelman, the Assistant Superintendent of RRPS, who informed her that she was being placed on a "growth plan" to improve her performance.  During the meeting, Plaintiff contends that Leppelman made inappropriate comments relating to "Plaintiff's practice of wearing hats and other attire associated with the African-American communit[y]."  (Doc. 1 Ex. A, Cplt. ¶ 12). Plaintiff was troubled by the tone of her meeting with Leppelman, which she considered harrassing and unproductive.

Two days after her meeting with Leppelman, Plaintiff met with Defendant Sue Cleveland, Superintendent of RRPS, to complain of Leppelman's behavior at their meeting. She also submitted a letter to Cleveland "underscoring her concerns with Leppelman's conduct and [ ] lack of managerial support."  *Id.* ¶ 14.  By the end of December 2006, Plaintiff alleges that she had repeatedly voiced her concerns (the Complaint does not state to whom) about the competency of her supervisors and their willingness to help her succeed in her new role.

On January 14, 2007, Plaintiff met again with Cleveland to discuss her concerns about her supervisors, Leppelman in particular.  Cleveland suggested that Plaintiff contact the Human

Resources Division at RRPS, and at some point in January 2007, Plaintiff met with Dr. Sue Passell, Executive Director of Human Resources, to discuss "the harassment she was experiencing under Leppelman." *Id.* ¶ 17.

On March 6, 2007, Dr. Passell contacted Plaintiff about the possibility of meeting to discuss mediation.  While Plaintiff agreed to mediate, for reasons not set forth in the Complaint, the meeting never took place.  RRPS did not reschedule the mediation.

On March 14, 2007, Plaintiff contacted Cleveland to inform her that she intended to take her concerns to the RRPS School Board.

On April 9, 2007, Leppelman informed Plaintiff that he would not be recommending that her employment contract be renewed for the following academic year.  On April 17, 2007, Plaintiff wrote a letter to her supervisors (who are not identified by name in the Complaint) "in an attempt to clarify and dismiss false allegations made by Defendant Leppelman to Defendant Cleveland regarding her rehiring status." *Id.* ¶ 23.  The Complaint does not set forth what allegations Leppelman made or how Plaintiff responded to them.

In a letter dated May 10, 2007, RRPS informed Plaintiff that her contract would not be renewed for the upcoming school year. According to the Complaint, the letter presented Plaintiff with the option of taking administrative leave, resigning immediately, or continuing to work through the remainder of her current contract.  On May 18, 2007, Cleveland met with Plaintiff and allegedly gave as the reason for the decision the fact that Puesta Del Sol Elementary would not meet its Annual Yearly Progress goals under Plaintiff's stewardship.  Plaintiff claims that at the time of her meeting with Cleveland, "numerous other schools" in RRPS were also not on target to meet their Annual Yearly Progress goals, but that she – the only African American female among them – was the only principal who did not see her contract renewed.  *Id.* ¶ 26.

3

On May 21, 2007, Plaintiff wrote to the RRPS School Board requesting a hearing regarding the non-renewal of her contract and her allegations of discriminatory treatment. Plaintiff alleges that she was not granted a hearing, and that she was informed by RRPS' attorney that the Board no longer had authority to settle personnel issues.

## LEGAL STANDARD

### *Rule 12(b)(6)*

Rule 12(b)(6) provides in relevant part that "failure to state a claim upon which relief can be granted" is a defense to a claim for relief in any pleading.  A court may dismiss a cause of action under Rule 12(b)(6) for failure to state a claim only if it appears beyond a doubt that a plaintiff can prove no set of facts in support of the claim that would entitle him or her to relief. *See Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 811 (1993).  A motion to dismiss should be granted if, viewing the well-pleaded factual allegations of the complaint as true, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  Thus, in considering a Rule 12(b)(6) motion, a court must assume all well pleaded facts, but not conclusory allegations, to be true, and must draw all reasonable inferences in favor of a plaintiff. *See Housing Auth. of the Kaw Tribe v. City of Ponca,* 952 F.2d 1183, 1187 (10th Cir. 1991); *Maher v. Durango Metals, Inc.*,144 F.3d 1302, 1304 (10th Cir. 1998). The issue in reviewing the sufficiency of a complaint is not whether a plaintiff will prevail ultimately, but whether a plaintiff is entitled to offer evidence to support his or her claim.  *See Scheuer v. Rhodes,* 416

U.S. 232, 236 (1974).  However, the rules do not require a court to accept legal conclusions or unwarranted inferences.  *See United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (citation omitted).

### *Qualified Immunity in the Context of a 12(b)(6) Motion to Dismiss*

"When a defendant raises qualified immunity in a Rule 12(b)(6) motion to dismiss, 'the plaintiff must carry the burden of establishing that the defendant violated clearly established law.'" *Johnson v. Bd. of Curry County Commissioners*, 2007 U.S. Dist. LEXIS 96214, (D.N.M., Nov. 18, 2007), quoting *Lybrook v. Members of Farmington Mun. Schools Bd. of Educ.*, 232 F.3d 1334, 1337 (10th Cir. 2000).  The nature of the qualified immunity inquiry imposes a "heavy two-part burden" on the plaintiff.   In order to defeat the qualified immunity defense, the plaintiff must both "demonstrate that the defendant's actions *violated* a constitutional or statutory right" and "show that the constitutional or statutory rights the defendant allegedly violated were *clearly established* at the time of the conduct at issue." *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008) (emphasis added).  Federal judges are permitted "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan,* 555 U.S. 223, 236 (2009).  For a right to be clearly established under the second prong, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995) (quotation omitted).  "A plaintiff can demonstrate that a constitutional right is clearly established by references to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits." *Gann v. Cline,* 519 F.3d 1090, 1092 (10th Cir. 2008)

If the plaintiff fails to show that a defendant's conduct violated a constitutional or

statutory right, the court need not reach the additional question of whether the law was clearly established at the time of the challenged conduct. *Butler v. Rio Rancho Pub. Schs. Bd. of Educ.*, 341 F.3d 1197, 1200 (10th Cir. 2003).

## DISCUSSION

### I.  Race Discrimination (42 U.S.C. §1981)

The Supreme Court has established that 42 U.S.C. § 1981 "affords a federal remedy against discrimination in private employment on the basis of the race." *Johnson v. Railway Express Agency, Inc*., 421 U.S. 454, 460 (1975).  The merits of a § 1981 claim are assessed "under the allocation burdens set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Martin v. Cent. States Emblems, Inc*. 150 Fed. Appx. 852, 858 (2005).[2]  Here, the individual Defendants argue that they are both entitled to qualified immunity because Plaintiff has failed to make out a prima facie case of discrimination against either of them.

#### Prima Facie Case

To establish a prima facie case of racial discrimination under § 1981, Plaintiff must show that (1) she "belongs to a protected class"; (2) she "suffered an adverse employment action"; and (3) "the challenged action took place under circumstances giving rise to an inference of discrimination." *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007).  Plaintiff

---

[2] Under the *McDonnell Douglas* analysis, if a plaintiff employee (1) establishes a prima facie case of discrimination, then (2) the burden shifts to the defendant employer to articulate a legitimate, non-discriminatory reason for having made adverse employment decisions regarding the plaintiff.  If the defendant meets its burden, all presumptions of discrimination are dropped, and (3) the burden shifts back to the plaintiff to show by a preponderance of the evidence that the defendant's proffered reasons for the allegedly discriminatory actions are merely a pretext for discrimination.

demonstrably meets the first prong, as the Complaint identifies her race as African American. (Doc. 1 Ex. A, Cplt. ¶ 7).

With regard to the second prima facie prong, Plaintiff lists "several facts that show Defendant Leppelman and Defendant Cleveland treated Plaintiff in a disparate [manner]," though she fails to apply the *McDonnell Douglas* analysis, and thus to explain which of her alleged facts constitute adverse employment actions taken by Defendants on the basis of racial discrimination. *See Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1268 (10th Cir. 2005) ("An adverse employment action includes acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."). The Court will consider whether Plaintiff meets the remaining prongs of the prima facie test for stating a discrimination claim against each of the individual Defendants in turn.

### *Assistant Superintendent Leppelman*

Plaintiff does not specifically identify which of Leppelman's alleged acts constituted an adverse employment action against her under any counts for §1981 or §1983 relief, and instead refers the Court to the factual allegations in her Complaint. These state that Leppelman placed her on a performance improvement plan three months after her hiring, "while other Princip[als] [were] given at least 6 months to get their program[s] running," (*id.* ¶ 10), but does not show how the earlier evaluation constituted a significant change in her employment status or responsibilities. While the Tenth Circuit "liberally define[s] the phrase 'adverse employment action,'" expanding the definition beyond monetary losses to include "acts that carry a significant risk of humiliation, damage to reputation, and a concomitant harm to future prospects," *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1239 (10th Cir. 2004), Plaintiff does not set

7

forth how her placement on a plan targeted to *improving* her school's performance carried a risk of harm to her future prospects.

Similarly, Plaintiff's claim that Leppelman made unspecified inappropriate comments relating to her "practice of wearing hats and other attire associated with the African-American communit[y]," (*id.* ¶ 12), to which Plaintiff devotes considerable attention in her brief, is, at most, evidence supporting an inference of discrimination under the third prima facie prong.  It is not, however, evidence of an adverse employment action.  *See Johnson v. Bd. of Curry County Cmm'rs*, 2007 U.S. Dist. LEXIS 96214, at * (D.N.M., Nov. 8, 2007) ("in order to show that [a defendant's] alleged racial comments . . . constituted either racial discrimination or unlawful retaliation under §1981, the [p]laintiff must allege that [the defendant's] actions resulted in an adverse employment action").

Finally, Plaintiff claims that Leppelman informed her that he would not be recommending that her contract be renewed for the upcoming school year.  However, because Plaintiff further contends that Cleveland "was the only one who made the decision not to rehire the Plaintiff," (Doc. 19 at 4), the Court finds that Plaintiff does not attribute the non-renewal of her contract to any action undertaken by Leppelman.

Thus, because Plaintiff fails to meet the second prong of the prima facie analysis by showing that Leppelman took an adverse employment action against her, she has likewise failed to meet the first prong of the qualified immunity test by showing that Leppelman violated her right to be free from race-based discrimination under §1981.  Leppelman is therefore entitled to qualified immunity on Plaintiff's § 1981 claim.

### Superintendent Cleveland

Plaintiff met with Cleveland in November 2006 to discuss Leppelman's inappropriate

behavior and lack of managerial support, but claims that Cleveland failed to take any steps to

assist her until their second meeting, in January 2007, when Cleveland directed Plaintiff to

Human Resources.  Plaintiff does not set forth any facts showing that the wait between meetings

constituted an adverse employment action against her. "[F]ailing to take unspecified 'remedial

actions' [is] not analogous to the concrete alterations in employment status that courts recognize

as satisfying [the adverse employment action] standard."  *Gerald v. Locksley*, 2011 U.S. Dist.

LEXIS 53469, at *101 (D.N.M., May 6, 2011)

Plaintiff does, however, meet the second prima facie prong by alleging that Cleveland

made the decision to not renew her contract with RRPS.  The non-renewal of Plaintiff's

employment contract marked an obvious and significant change in her employment status

constituting an adverse employment action.  *See Dick,* 397 F.3d at 1268.

The third and final prong of the prima facie test requires Plaintiff to show that the non-

renewal of her employment contract took place under circumstances giving rise to an inference

of discrimination.  A plaintiff can meet the third prong if she can show that preferential treatment

was given to similarly situated employees outside her protected class or by showing that the

defendant's actions or remarks could be viewed as reflecting discriminatory animus or that the

timing of events leading up to the adverse action are suggestive of discrimination.  *See Plotke v.

White*, 405 F.3d 1092, 1101 (10th Cir. 2005).  Here, Plaintiff asserts that at the time Cleveland

decided not to renew her contract, there were numerous other schools in [the RRPS district] that

were not going to be reaching [their] Annual Yearly Progress goals but, who do not have female

African-American [p]rincipals.  These [principals] all had their contracts renewed for the next

year." (Doc. 1 Ex. A, Cplt. ¶ 26).  Assuming these facts to be true, as it must, the Court finds

that they raise an inference that Plaintiff was treated differently than similarly-situated

employees outside her protected class, which is sufficient to state a claim to relief that is plausible on its face. *See Twombly*, 550 U.S. at 570; *Mink v. Knox,* 613 F.3d 995 (10th Cir. 2010). The sufficiency of Plaintiff's factual allegations that she was treated in a disparate manner from similarly-situated school principals at RRPS is discussed at greater length *infra, at* 13, with respect to Plaintiff's equal protection claim under §1983.

Having set forth a prima facie claim of race-based discrimination under §1981, Plaintiff also satisfies half her burden under the qualified immunity test – the burden of showing that her rights were violated by Cleveland. Thus, the only remaining burden Plaintiff must meet in order to withstand Cleveland's assertion of qualified immunity is to demonstrate that the right she has asserted – the right to be free from race-based discrimination pursuant to §1981 – was clearly established at the time of the alleged violation. *See Archuleta*, 523 F.3d at 1283. The Court observes that the prohibition against "discrimination in private employment on the basis of race" has long been established under both Supreme Court and Tenth Circuit case law. *See, e..g., Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454 at 459-60; *Martin,* 152 Fed. Appx. 852 at 858. Thus, the Court will deny Defendant Cleveland's motion to dismiss Plaintiff's race discrimination claim on the basis of qualified immunity.

## II. Equal Protection, 42 U.S.C § 1983

To state a claim upon which relief can be granted under §1983, a plaintiff must allege the deprivation of a federal right and that the individual who deprived her of that right acted under color of state law. *See West v. Atkins,* 487 U.S. 42, 48 (1988). Here, Plaintiff claims that she is entitled to relief under §1983 because state actors Leppelman and Cleveland violated her equal protection rights under the constitution.

A violation of the Fourteenth Amendment right to equal protection under the laws occurs

when the government treats someone differently than another individual who is similarly situated. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  Thus, "[i]In order to assert a viable equal protection claim, [a] plaintiff[] must first make a threshold showing that [she was] treated differently from others who were similarly situated to [her]." *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998).  "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline."  *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006) (quotations omitted). Courts considering whether two employees are similarly situated "should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees." *Id.*  In order for their disparate treatment to be relevant, similarly situated employees must have engaged in conduct of "comparable seriousness" in order for their disparate treatment to be relevant. *Id.* Moreover, it is not sufficient for the Plaintiff to merely allege disparate treatment among similarly situated employees; "[t]o prevail on an equal protection claim, a plaintiff must show that he or she was subjected to an adverse employment action." *Gerald,* 2011 U.S. Dist. LEXIS 5469, at *70 (collecting cases); *Etsitty v. Utah Transit Auth.,* 502 F.3d 1215, 1227 (10th Cir. 2007) ("in disparate-treatment discrimination suits, the elements of a plaintiff's case are the same whether that case is brought under §§ 1981 or 1983")..

### *Assistant Superintendent Leppelman*

Plaintiff fails to state a plausible equal protection claim against Leppelman.  First, as discussed above in reference to her race discrimination claim, Plaintiff does not allege that Leppelman took an adverse employment action against her.  *See Gerald,* 2011 U.S. Dist. LEXIS

5469 at *147 (finding plaintiff's "fail[ure] to allege an adverse employment action [to be] fatal to his equal protection claim"). While the Complaint generically recites that Leppelman placed Plaintiff on a growth plan to improve her performance in her new position less than three months into her tenure, and that "other princip[als] [were] given at least 6 months to get their program[s] running" (Doc. 1 Ex. A, Cplt. 10), Plaintiff does not plead facts showing that being placed on a performance improvement plan constituted an adverse employment action. Moreover, Plaintiff does not allege that the "other principals" who avoided placement on the performance improvement plan at the two-and-a-half month mark were outside her protected class or had engaged in comparably serious conduct – i.e., that the schools over which they presided were in similar circumstances.

Because Plaintiff's equal protection claim against Leppelman fails for want of allegations of an adverse employment action or disparate treatment, she cannot show a violation of the equal protection clause sufficient to defeat Leppelman's qualified immunity defense. Leppelman is therefore entitled to qualified immunity on Plaintiff's equal protection claim.

### *Superintendent Cleveland*

Plaintiff has, however, sufficiently pled an equal protection claim against Cleveland. First, as discussed above with regard to her discrimination claim, Plaintiff alleges that Cleveland took an adverse employment action against her by failing to renew her employment contract.

Equally important, Plaintiff has set forth sufficient facts showing disparate treatment of similarly-situated individuals. The Complaint alleges that non-African American principals of "numerous other schools" in the RRPS district who, like Plaintiff, failed to meet their Annual Yearly Progress goals, all had their contracts renewed. (Doc. 1 Ex. A, Cplt.¶ 26). While Defendants contend that the allegations in the Complaint are insufficient because Plaintiff fails

to identify another principal whose contract was renewed after failing to meet her Annual Yearly Progress goals in her first year as an RRPS principal, the Court finds that Plaintiffs allegations are sufficient, even without further specification, under the *Twombly* plausibility standard.  The Tenth Circuit has observed that in the context of determining the sufficiency of a complaint, "'plausibility' . . .refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[] [has] not nudged their claims across the line from conceivable to plausible." *Christensen v. Park City Municipal Corp.*, 554 F.3d 1271, 1276 (10th Cir.2009) (quotation and marks omitted).  The plausibility requirement "serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them."  *Id.*

Here, Plaintiff has alleged that the other prinicipals had their contracts renewed by Cleveland and RRPS, thereby establishing that they "deal[t] with the same supervisor and [were] subject to the same standards governing performance evaluation and discipline" as Plaintiff. *McGowan,* 472 F.3d at 745.  Construing the Complaint liberally, as it is obligated to do, the Court finds that if Plaintiff is able to prove these allegations, she plausibly has a claim for equal protection relief.  Moreover, the Complaint provides sufficient factual material for Cleveland to understand the basis of Plaintiff's equal protection claim against her.  While it is certainly possible that discovery will reveal a lack of other "relevant employment circumstances" between Plaintiff and the other principals relating to their employment histories, at this state of the litigation, the Court finds the allegations that Plaintiff and the other, non-African American principals shared a job title, supervisors, and governing standards of employment; engaged in the same conduct by failing to meet their annual goals; and received disparate treatment from

Cleveland suffice to make the claim plausible under *Twombly*.

Having set forth an equal protection claim against Cleveland under §1983, Plaintiff likewise satisfies the first half of her burden in defeating Cleveland's qualified immunity defense (which, in the context of the instant motion, merely requires Plaintiff to make a showing – sufficient to withstand a motion to dismiss under Rule 12(b)(6) – that her rights were violated by Cleveland). Thus, the only remaining burden Plaintiff must meet in order to overcome Cleveland's qualified immunity defense is to demonstrate that the right to equal protection under the laws in the §1983 was clearly established at the time of the alleged violation. Once again, the Court observes that the Supreme Court and Tenth Circuit have repeatedly recognized that the Equal Protection Clause of the Fourteenth Amendment "keeps governmental decision makers from treating differently persons who are in all relevant respects alike." *Soskin v. Reinertson*, 353 F.3d 1242, 1247 (10th Cir. 2004) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)); *see also Corder v. Lewis Palmer School Dist. No. 38*, 566 F.3d 1219, 1233 (10th Cir. 2009). Thus, the Court will deny Defendant Cleveland's motion to dismiss Plaintiff's equal protection claim against her on the basis of qualified immunity.

## III.  Due Process Liberty Interest, 42 U.S.C. § 1983.

Count IV of the Complaint alleges that "Defendant's release of defamatory and false statements of wrongdoing regarding Plaintiff to the public violated Plaintiff's liberty interest in her good name and reputation." (Doc. 1 Ex. A, Cplt. ¶ 51). Count IV does not specify which individual Defendant(s) are alleged to have violated Plaintiff's due process rights. The individual Defendants move to dismiss the claim on the argument that the Complaint fails to plead facts showing that either Cleveland or Leppelman made defamatory statements about Plaintiff.

14

The Tenth Circuit has set forth a four-prong test that a plaintiff must satisfy to state a liberty-interest claim based on damaging defamatory statements:

> First, to be actionable, the statements must impugn the good name, reputation, honor, or integrity of the employee. Second, the statements must be false. Third, the statements must occur in the course of terminating the employee or must foreclose other employment opportunities. And fourth, the statements must be published.

*Workman v. Jordan,* 32 F.3d 475, 481 (10th Cir. 1994) (citations omitted). "These elements are not disjunctive, all must be satisfied to demonstrate deprivation of the liberty interest." *Id.*

Plaintiff's Complaint fails to identify which of Leppelman's and/or Cleveland's statements meet the *Workman* test. The Court will consider whether Plaintiff has sufficiently pled a liberty-interest claim against each of the individual Defendants in turn, in light of Plaintiff's general factual allegations within the four corners of the Complaint.

### *Assistant Superintendent Leppelman*

The Complaint contains one reference to a statement by Leppelman that, Plaintiff alleges, was both false and published: "On April 17, 2007, Plaintiff submitted a letter to her superiors in an attempt to dismiss false allegations made by Defendant Leppelman to Defendant Cleveland regarding her rehiring status." (Doc. 1 Ex. A, Cplt. ¶ 24). Plaintiff does not, however, meet the first prong of the *Workman* test by showing that Leppelman's remarks impugned her good name. The Complaint fails to state what the false allegations were, and does not set forth any facts showing that a false statement about Plaintiff's "rehiring status" was injurious to her reputation.

Plaintiff also fails to meet the third *Workman* prong, as there is no suggestion in the Complaint that Leppelman's remarks factored into the non-renewal of her employment contract. While the Tenth Circuit has held that "publication of defamatory statements need not be strictly contemporaneous with a termination to occur in the course of the termination of employment," it

is essential that a court "examine both the nature and the timing of an allegedly defamatory statement to determine whether it has been made in the course of an employee's termination." *Renaud v. Wyo. Dep't of Family Servs.*, 203 F.3d 723, 727 (10th Cir. 2000).  Plaintiff does not set forth allegations showing that Leppelman's remarks were made in the course of Defendants' non-renewal of her contract – which Cleveland stated was on account of Puesta Del Sol's failure to meet Annual Yearly Progress Goals under Plaintiff, and which the Complaint alleges was on account of Plaintiff's race.  There is simply no allegation that Leppelman's unspecified defamation provided an additional motivation for the decision.  Moreover, with regard to timing, Plaintiff fails to state when Leppelman's allegedly false statements were published to Cleveland, alleging only that she sought to defend herself from them on April 17, 2007, one month before she learned that her contract would not be renewed.   Plaintiff thus fails to set forth that her liberty interest was deprived by Leppelman, and consequently, to show a violation of the due process clause sufficient to defeat Leppelman's qualified immunity defense.  Leppelman is therefore entitled to qualified immunity on this additional ground.

### Superintendent Cleveland

Plaintiff does not allege anywhere within the four corners of the Complaint that Cleveland deprived her of her Fourteenth Amendment liberty interest.  In her response brief, Plaintiff states for the first time that the alleged defamation concerned Cleveland's publication to "the Board of Directors" – presumably, the RRPS School Board -- that Puesta Del Sol Elementary would not make its Annual Yearly Progress goals under Plaintiff.[3]  (Doc. 19 at 6).

---

[3] The Complaint does not set forth what Puesta Del Sol's "Annual Yearly Progress" goals were.  Further, Plaintiff does not explain whether all schools in the RRPS district were held to a uniform standard or whether Annual Yearly Progress goals were tailored to individual schools in the district.

Plaintiff's claim is less than clear, as she appears to simultaneously allege that Cleveland's statements about the school's progress were false – "based upon improper assertions of Defendant Leppelman and with full knowledge that Plaintiff has complained about her disparate treatment" – and that they were true, but reflective of the higher standard to which Plaintiff's performance was improperly held: "At the time[,] many of the Defendant's schools were not going to make a high enough rating on the Annual Yearly Progress report, but Defendant Cleveland only chose to report to school board about the Plaintiff." *Id.*

Construing the Complaint liberally and taking the allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff has nevertheless failed to state a due process claim against Cleveland. In the wake of *Twombly*, a claim should properly be dismissed if the Complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. See also *Mobley*, 40 F.3d at 340 ("The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations *within the four corners of the complaint* after taking those allegations as true.") (emphasis added). Plaintiff does not set forth *any* factual allegations relating to Cleveland's alleged defamation within the four corners of the Complaint, let alone allegations that are sufficiently pled to be plausible under *Twombly*. Because Plaintiff fails to show a violation of the due process clause sufficient to defeat Cleveland's qualified immunity defense, the Court finds Cleveland is entitled to qualified immunity on Plaintiff's due process claim.

**IV. First Amendment Claim, 42 U.S.C. § 1983.**

Finally, the Complaint declares at Count V that Plaintiff's contract was not renewed in part because she reported her allegations of racial discrimination and disparate treatment to other RRPS employees, the RRPS School Board, and "outside private . . . agencies"– actions which

17

"potentially opened [RRPS] to liability."  (Doc. 1 Ex. A, Cplt. ¶¶ 58-59).  There is no specific

factual allegation in the Complaint that Plaintiff recited her allegations to any of these groups

before the decision to not renew her contract was made.  While Plaintiff sets forth that she

complained about Leppelman in a letter to certain unidentified "superiors" on April 17, 2007,

one month before the decision, she states only that she did so "in an attempt to clarify and

dismiss false allegations" Leppelman made about her. There is no mention that the letter set

forth any allegations that the individual Defendants were treating Plaintiff differently on account

of her race. *Id.* ¶ 23.  Plaintiff further alleges that she notified Cleveland of her intent to go to

the RRPS School Board "with her concerns" two months before Cleveland informed her of the

decision to not renew her contract, but does not claim that she ever reported allegations of any

kind to the Board until *after* she learned of Cleveland's decision: "On May 21, 2007, Townsend-

Johnson sent a letter to the Board requesting a hearing regarding the non-renewal status of her

employment contract, and wished to address the inequity and discrimination she endured

throughout her short employment with RRPS."  *Id.* ¶ 28.

Because the Complaint fails to set forth sufficient factual allegations that the non-renewal

of her contract was due in part to any speech by Plaintiff,[4]  the Court need not address whether

Plaintiff has stated a claim that her speech was protected by the First Amendment.  Moreover,

because Plaintiff has failed to show that her First Amendment rights were violated, the

_____

[4]Moreover, Plaintiff's Count V accuses both of the individual Defendants of violating her First Amendment rights in not renewing her contract.  As discussed above, Plaintiff has failed to allege that she suffered any adverse employment action at the hands of Leppelman, including that he played a role in the non-renewal of her contract.  This does not appear to be an oversight in pleading, as Plaintiff notes throughout her response brief that Defendant Cleveland "has the final say in who is re-hired and who is not," (Doc. 19 at 6), and that she "was the only one who made the decision not to rehire the Plaintiff."  *Id.* at 4.

individual Defendants are entitled to qualified immunity on Plaintiff's First Amendment claim.

## CONCLUSION

For the foregoing reasons, it is therefore ordered that the individual Defendants' *Motion to Dismiss on Qualified Immunity Grounds* (Doc. 14) is granted in part – such that Plaintiff's claims are dismissed with prejudice – and denied in part as follows:

1.    As to Plaintiff's Count II of race discrimination against Defendant Leppelman, Defendants' motion is GRANTED.

2.    As to Plaintiff's Count II of race discrimination against Defendant Cleveland, Defendants' motion is DENIED.

3.    As to  Plaintiff's Count III of equal protection against Defendant Leppelman, Defendants' motion is GRANTED.

4.    As to Plaintiff's Count III of equal protection against Defendant Cleveland, Defendants' motion is DENIED.

5.    As to Plaintiff's Count IV of due process against Defendant Leppelman, Defendants' motion is GRANTED.

6.    As to Plaintiff's Count IV of due process against Defendant Cleveland, Defendants' motion is GRANTED.

7.    As to Plaintiff's Count V of violation of the First Amendment against Defendant Leppelman, Defendants' motion is GRANTED.

8.    As to Plaintiff's Count V of violation of the First Amendment against Defendant Cleveland, Defendants' motion is GRANTED.

JUDITH C. HERRERA
UNITED STATES DISTRICT JUDGE