UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LINDA TOWNSEND-JOHNSON,

    Plaintiff,

v.                                            Cr. No. 10-257 JCH/DHS

RIO RANCHO PUBLIC SCHOOLS,
SUPERINTENDENT SUE CLEVELAND,
ASSISTANT SUPERINTENDENT CARL LEPPELMAN,
in their official and individual capacities,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants' *Motion for Summary Judgment on All Remaining Counts, Including Plaintiff's Claim for Lost Wages* (Doc. 73). In the underlying Complaint, Plaintiff Linda Townsend-Johnson accuses Defendants Rio Rancho Public Schools ("RRPS"), RRPS Superintendent Sue Cleveland, and RRPS Assistant Superintendent Carl Leppelman of breach of contract and various constitutional and federal civil rights violations, in connection with the non-renewal of her employment contract as Principal of Puesta Del Sol Elementary School. Defendants now seek summary judgment on all claims not previously dismissed by Order of the Court.[1] The Court having considered the motion, briefs, exhibits, and the relevant law, and being otherwise fully informed, finds that Defendant's motion should be granted.

---

[1] *See* this Court's September 13, 2011 Memorandum Opinion and Order (Doc. 29) (dismissing claims of race discrimination and equal protection violation against Leppelman only, and dismissing due process and First Amendment claims against both Cleveland and Leppelman); July 26, 2012 Memorandum Opinion and Order (Doc. 56) (dismissing breach of contract claim against both Cleveland and Leppelman), and June 7, 2013 Memorandum and Order (Doc, 88) (dismissing due process and First Amendment claims against RRPS).

**FACTUAL BACKGROUND**

Plaintiff is an African-American female. In June or July 2006, shortly after obtaining her Ph.D. in Philosophy and Education from Oregon State University, Plaintiff applied for and ultimately obtained the position of Principal of Puesta Del Sol Elementary, a public school within RRPS. Plaintiff began serving in her new position on August 7, 2006, two-and-a-half weeks after other principals in the school district, who began working on July 20, 2006 in order to "prepare their schools and receive training in what the district required of them for the upcoming year," before teachers returned to work. (Doc. 77 at 5). It is unclear why Plaintiff's contract did not start running at the same time as her peers' contracts, though it is undisputed that it was not Plaintiff's decision.

**October 2006 Lockdown Incident**

In late October 2006, RRPS Assistant Superintendent Carl Leppelman began to receive complaints about Plaintiff from staff at Puesta Del Sol with whom he had pre-existing relationships. While the parties do not specifically set forth the nature, source, or extent of the complaints Leppelman received, at least some of them involved a lockdown of the school that Plaintiff ordered earlier in the month, due to an unspecified threat in the area on the date in question. While the details of the situation are unclear, Plaintiff acknowledges that she misspoke to school staff when she initially gave them the impression that the lockdown amounted to a practice drill, rather than a response to an actual, perceived danger. Plaintiff contends that she did not intentionally mislead school staff, and sought to clarify the teachers' false impression when she learned of it.

**Plaintiff's First Meeting With Leppelman and Subsequent Complaint**

On November 10, 2006, Plaintiff had her first one-on-one meeting with Leppelman, her

2

immediate supervisor.  According to Plaintiff, Leppelman's manner throughout the meeting was dismissive and harassing.  Leppelman began the meeting by criticizing Plaintiff's clothing and hat, which Plaintiff informed him were widely worn in the African American community.  Leppelman further surprised Plaintiff by limiting their subject of conversation to "staff concerns about the Plaintiff[,] which he [recited] in a loud[,] derogatory tone," rather than discussing other aspects of Plaintiff's first few months on the job.  (Doc. 77 at 6).  At the conclusion of the meeting, Leppelman placed Plaintiff on a Professional Growth Plan, outlining several areas for improvement.  The Plan further provided that Plaintiff and Leppelman would meet weekly to discuss Plaintiff's progress.

On November 12, 2006, Plaintiff submitted a letter to RRPS Superintendent Sue Cleveland underscoring her concerns with Leppelman's conduct at the meeting and lack of managerial support.  Plaintiff relayed that she was "shocked by what was an attack on me [by Leppelman] on a personal and professional level," as Leppelman impugned her honesty and character based solely on the word of "some teacher(s) that he has had strong relationships with for years that work at Puesta del Sol," whom Leppelman declined to identify at the meeting.  (Doc. 74 Ex. 6 at 2).  Plaintiff also reiterated that she had ordered the October lockdown "to err on the side of caution. . . .  According to Leppelman, several teachers currently believe that I stated that it was a planned lockdown.  Obviously, this is something I need to clarify with my staff."  *Id.*  Plaintiff suggested that she should have been interviewed prior to the meeting, and given an opportunity "to provide clarity" regarding Leppelman's misapprehensions about her performance.  *Id.*  She contended that she was "be[ing] set up for failure," because Leppelman was not requiring "a teacher or a few teachers [who] are not happy about the prospect of change" to go to her with their concerns before taking them directly to Leppelman.  *Id.* at 3.  Plaintiff's

3

letter did not contain any allegations of racial discrimination or retaliatory conduct by Leppelman or other RRPS personnel.

The same day, November 12, 2006, Plaintiff met with Cleveland to further discuss the contents of her letter.

### Leppelman's Meeting Cancellations and Second Growth Plan

Between November 10, 2006 and January 10, 2007, Leppelman cancelled all but one of his weekly meetings with Plaintiff.

On January 10, 2007, Leppelman issued to Plaintiff a second Professional Growth Plan, telling her that she was still not meeting her goals in certain areas, despite what he characterized as their weekly meetings.

### Plaintiff Renews Her Complaints About Leppelman

On January 14, 2007, Plaintiff again wrote to Cleveland with her concerns about Leppelman. Plaintiff noted that Leppelman had failed to provide her with support or notify her about any concerns, prior to putting her on her first Professional Growth Plan; breached his promise to meet with her on a weekly basis, as provided in the Plan; informed her that he gave credence to the word of staff members at Puesta del Sol over Plaintiff's version of events, and encouraged them to complain directly to him, rather than resolve their issues with Plaintiff directly; and relied on "non fact[-]based accusations to assess my performance." (Doc. 74 Ex. 7). Again, Plaintiff's letter did not contain any allegations of racial discrimination or retaliation.

The same day, January 14, 2007, Plaintiff met again with Cleveland to personally discuss the concerns set forth in her letter. Cleveland informed Plaintiff that she needed to pass her concerns directly to RRPS Human Resources. Plaintiff subsequently met with RRPS HR Director Sue Passell in late January 2007.

A January 2007 "Climate Survey" of teachers at Puesta Del Sol Elementary showed that Plaintiff was experiencing "some improvement" in achieving professional competencies. (Doc. 80 at 7).

### Plaintiff Rejects Transfer to Assistant Principal Position

On a date not set forth by the parties, Leppelman approached Plaintiff with the possibility of Plaintiff taking the lower-ranked position of Assistant Principal at another school within RRPS, at the same rate of pay and with the same benefits as her current position. Plaintiff testified that she did not consider the proposal as constituting a formal job offer, because it was not made by Superintendent Cleveland and did not specify the school at which she would work. Plaintiff does not dispute that she rejected the possibility of such a transfer.

### Third Growth Plan and Cancelled Mediation

On February 27, 2007, Leppelman issued Plaintiff a third Professional Growth Plan which, *inter alia,* added new requirements and contained a provision allowing Plaintiff an opportunity for mediation to resolve any outstanding concerns.

On March 6, 2007, HR Director Passell emailed Plaintiff that Passell and Dr. Sue Carley would be at Puesta Del Sol on March 14, 2007 to speak to Plaintiff and the staff about mediation. At some point thereafter, Passell informed Plaintiff that no mediation was to be held, after all.

### Plaintiff's Further Complaints About Leppelman and Fourth Growth Plan

On March 14, 2007, Plaintiff wrote to the RRPS School Board – via e-mail to Cleveland – with her "grievance of biased and inequitable treatment towards me as an administrator within the district. I believe that [RRPS] Policy 203 Nondiscrimination Policy may have been violated." (Doc. 77 Ex. 12). Plaintiff did not provide any additional detail as to the purported inequitable treatment under which she was working, but did ask that the Board "conduct a

5

thorough investigation" into Leppelman's interactions with "the group of teachers that he characterizes as his 'friends' that help to create disarray with my staff. One would like to believe that Policy 203 has not been violated however I beseech you to look at all possible causes for the inequitable treatment that I have endured." *Id.*

On March 21, 2007, Leppelman placed Plaintiff on a fourth Professional Growth Plan.

### **Non-Renewal of Plaintiff's Contract**

On April 9, 2007, Plaintiff met with Leppelman and Passell for her end-of-year summary evaluation. During the meeting, Leppelman disclosed to Plaintiff that he was not recommending Plaintiff for re-hire for the upcoming school year. At that time, Leppelman gave Plaintiff a fifth Professional Growth Plan, this one authored by an independent evaluator, Deborah Dominguez-Clark. Plaintiff formally responded to the comments in the fifth Growth Plan by memorandum on April 14, 2007 (it is unclear to whom the memorandum was sent). Plaintiff noted that she felt Clark's impartiality was compromised by her access to Leppelman's previous Plans, and attempted to refute Clark's concerns point-by-point.

On May 10, 2007, Cleveland informed Plaintiff that her contract would not be renewed. At a follow-up meeting between Plaintiff, Cleveland, and Passel in late May, Plaintiff contends that one of the reasons Cleveland offered for her decision not to renew Plaintiff's contract was Puesta del Sol's failure to meet Annual Yearly Progress goals under Plaintiff's stewardship.

Plaintiff wrote to Cleveland requesting the written reasons for her termination. On June 6, 2007, Cleveland sent Plaintiff a letter stating that her decision to not renew Plaintiff's contract was based on the reviews of Leppelman and Debra Dominguez-Clark and the information contained in Plaintiff's Professional Growth Plans. Cleveland "concluded that there was not sufficient growth or improvement in the areas identified as areas of concern to support the offer

of a new contract." (Doc. 74 Ex. C). On June 14, 2007, Plaintiff wrote to the RRPS School Board requesting a meeting to discuss the non-renewal of her contract and her allegations of discriminatory treatment. There is no information in the record as to whether the meeting occurred.

## LEGAL STANDARD

### Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure requires that summary judgment be rendered "where no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law." *Hackworth v. Progressive Cas. Ins. Co.*, 468 F.3d 722, 725 (10th Cir. 2006); *see also* Fed. R Civ. P. 56(c)(2). The moving party bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation and marks omitted). Once this burden has been met, "the burden shifts to the nonmoving party to show that there is a genuine issue of material fact. The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor." *Id. See also Clifton v. Craig,* 924 F.2d 182, 183 (10th Cir. 1993). It is not enough for the nonmoving party to "rest on mere allegations or denials of his pleadings" to avoid summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *see also West v. New Mexico Taxation and Rev. Dept*., No. Civ. 09-0631, U.S. Dist. LEXIS 131626, at *42 (D.N.M., Oct. 31, 2010) ("[n]or can a party avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation") (internal quotation and marks

omitted). In reviewing a motion for summary judgment, the court must "examine the factual record and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1184 (10th Cir. 2010).  Its function at this stage is "not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 243.

## DISCUSSION

Defendants move for summary judgment on the four claims remaining against one or more of them (*see supra,* n. 1): (I.) race discrimination, against RRPS and Cleveland; (II.) breach of contract, against RRPS; (III.) retaliation, against all Defendants; and (IV.) violation of the equal protection clause of the Fourteenth Amendment, against RRPS and Cleveland.  The Court will take up Defendants' arguments with respect to each of the remaining claims, in turn.

**I.      Race Discrimination Claim Against RRPS and Cleveland (42 U.S.C. § 1981)**

The Supreme Court has established that 42 U.S.C. § 1981 "affords a federal remedy against discrimination in private employment on the basis of the race." *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 460 (1975).  The merits of a § 1981 claim are assessed "under the allocation burdens set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Martin v. Cent. States Emblems, Inc*. 150 Fed. Appx. 852, 858 (2005).[2]  For purposes

---

[2] Under the *McDonnell Douglas* analysis, if a plaintiff employee (1) establishes a prima facie case of discrimination, then (2) the burden shifts to the defendant employer to articulate a legitimate, non-discriminatory reason for having made adverse employment decisions regarding the plaintiff.  If the defendant meets its burden, all presumptions of discrimination are dropped, and (3) the burden shifts back to the plaintiff to show by a preponderance of the evidence that the defendant's proferred reasons for the allegedly discriminatory actions are merely a pretext for discrimination.

of the instant motion, Defendants do not dispute that Plaintiff can meet the first prong of the *McDonnell Douglas* test by making a prima facie case of racial discrimination against RRPS and Superintendent Cleveland. *See supra,* n.2. Rather, Defendants argue that summary judgment should be granted because (1.) RRPS and Cleveland had legitimate, non-discriminatory reasons for deciding not to renew Plaintiff's contract, and (2.) Plaintiff cannot meet her burden of production of showing a triable issue as to whether Defendants' proffered reasons for the non-renewal were a mere pretext for discrimination.

### *Legitimate, Non-Discriminatory Reasons for Non-Renewal of Plaintiff's Contract*

Defendants contend that "[t]he decision to not renew Plaintiff['s] employment contract was not based on one issue, but rather a year-long culmination of issues," (Doc. 74 at 8), most of which they fail to identify with specificity. *See* Doc. 80 at 10 (non-renewal "was based upon a plethora of problems Plaintiff had during her time as [P]rincipal"); *id.* at 13 ("Plaintiff's multiple issues outlined in her growth plans justified the non-renewal of her contract."). Defendants do, however, specifically proffer two legitimate and non-discriminatory reasons for failing to renew Plaintiff's contract: (1) the series of complaints from teachers at Puesta del Sol that Plaintiff misrepresented an emergency lockdown as a practice drill; and (2) Plaintiff, a first-year Principal's, difficulties with achieving leadership competency, which prompted Leppelman to place her on a series of Professional Growth Plans, and Defendants to offer her an Assistant Principal position in order "to hone her skills as an administrator." *Id.* at 9.

### *Plaintiff's Case for Pretext*

In her response, Plaintiff contends that Defendants' proffered reasons for the non-renewal are merely pretextual in light of Cleveland's statement that she relied on the end-of-year reviews of Plaintiff by Leppelman and independent evaluator Debra Dominguez-Clark, as well

9

as the information contained in Plaintiff's Professional Growth Plans, in making her decision. Plaintiff points out that one provision of the first Growth Plan called for weekly progress meetings between her and Leppelman, most of which were ultimately cancelled by the latter. Plaintiff appears to suggest that Leppelman stated on subsequent Growth Plans that these meetings had occurred – stating that she "became concerned at Leppelman's false statements knowing that they had only met for one weekly meeting" as of January 14, 2007, and alerted Cleveland to the reality of the situation. (Doc. 77 at 16). Plaintiff does not, however, cite to the portion of the Growth Plan(s) at which the "false statements" were made. Rather, she concludes that the "use of false statements in the Professional Growth Plan and the knowledge [of] Superintendent Sue Cleveland that Carl Leppelman had lied on the Professional Growth Plan shows that [Defendants did] not [have] a legitimate business reason to not [re]new the Plaintiff." *Id.*

      The Court finds that Plaintiff fails to show a genuine dispute of material fact as to whether Defendants' proffered reasons for failing to renew her contract are pretextual. The Tenth Circuit has held that a plaintiff opposing summary judgment on a § 1981 discrimination claim must present evidence that raises an inference that the defendant's legitimate non-discriminatory explanations for taking an adverse employment action against her are "so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude they are unworthy of belief." *EEOC v. C.R. England, Inc.,* 644 F.3d 1028, 1039 (10th Cir. 2011) (alteration and internal quotation marks omitted). Here, Plaintiff argues only that Cleveland gave significant weight to the opinion of a supervisor who failed to meet his own self-imposed obligation to provide Plaintiff with weekly mentoring sessions. Plaintiff does not argue, let alone offer evidence, that Leppelman's and Clark's evaluations and the findings in their Growth

10

Plans were so lacking in credibility that Cleveland's professed reliance on them was unworthy of belief. "It is well-established that [a court's] role isn't to ask whether the employer's decision was wise, fair or correct, but whether it honestly believed the legitimate, nondiscriminatory reasons it gave for its conduct and acted in good faith on those beliefs." *Green v. JP Morgan Chase Bank Nat'l Ass'n,* 501 Fed. Appx. 727, 732 (10th Cir. 2012) (quotation omitted). Therefore, in the absence of any evidence that Cleveland lacked a good-faith belief in the legitimacy of the Puesta del Sol staff's complaints about Plaintiff and/or in the credibility of Plaintiff's evaluators, the Court finds that summary judgment should be granted on Plaintiff's race discrimination claim.

## II.     Breach of Contract Claim Against RRPS

Plaintiff's Complaint alleges that "harassment and racial discrimination by Defendant Leppelman and the non-support and lack of action concerning Plaintiff's complaints violated the Plaintiff's employment contract and the schools [sic] handbook, policies and procedures." (Doc. 1 Ex. 1 ¶ 32). Plaintiff's claim appears to be that (1.) RRPS breached Plaintiff's express employment contract for the 2006-2007 year by allowing its employee, Leppelman, to discriminate against her on the basis of race; and (2.) an additional implied contract existed between Plaintiff and RRPS through the latter's use of a policy handbook, which RRPS breached by permitting Leppelman's discriminatory conduct.

Defendants argue that summary judgment should be granted on the instant claim because there is "no applicable precedent" supporting Plaintiff's position that discriminatory conduct can constitute a contractual breach under the facts in issue, so that "Plaintiff's argument rests entirely on conjecture." (Doc. 80 at 9). Plaintiff responds, briefly, by pointing to a general provision in

her 2006-2007 employment contract which states that the parties to the contract "are and shall continue to be subject to applicable laws of the State of New Mexico and the rules and regulations of the State Board of Education and Superintendent." (Doc. 77 at 10) (citing Doc. 74 Ex. H). Plaintiff does not, however, attempt to explain how State laws and/or Board of Education rules were violated by Defendants. Moreover, even assuming, *arguendo,* that she had offered specific evidence that Defendants violated New Mexico law or RRPS policies, Plaintiff does not point to any case law holding that a claim for breach of contract could be premised on such a violation. Rather, Plaintiff concludes, in vague fashion, that support for her argument can be found in her discussion of "the subsequent counts." (Doc. 77 at 11). Because Plaintiff may not avoid summary judgment by inviting the Court to speculate as to the nature of her claim, the Court finds that summary judgment should be granted to Defendants on Plaintiff's claim for breach of express contract. *See West v. New Mexico Taxation and Rev. Dept*., U.S. Dist. LEXIS 131626, at *42.

Further, with regard to the claim in Plaintiff's Complaint that Defendants breached an implied contract in the form of the RRPS policy handbook, the Court notes that the relevant section of the handbook does not appear in the summary judgment record; is not mentioned anywhere in Plaintiff's proposed material facts; and is not cited anywhere in her response brief. The Court therefore deems Plaintiff's claim for breach of implied contract abandoned.

Accordingly, the Court finds that summary judgment should be granted to Defendants RRPS and Cleveland on Plaintiff's claim for breach of contract.

### III.   Title VII Retaliation Claim Against All Defendants

Next, Plaintiff's Complaint alleges that Defendants retaliated against her in violation of

Title VII for complaining about the racial discrimination she experienced at the hands of Leppelman. Claims for retaliation brought under Title VII, like § 1981 discrimination claims, are assessed under the burden-shifting *McDonnell Douglas* standard. *See Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 425 F.3d 1193, 1202 (10th Cir. 2006). Here, Defendants contend that they are entitled to summary judgment because Plaintiff cannot meet the first prong of the *McDonnell Douglas* test by establishing a prima facie case of retaliation. *See supra* at 8 n.3. Further, Defendants argue that even if Plaintiff does set forth a prima facie case, she cannot meet the final *McDonnell Douglas* prong by showing that the proffered reasons for the non-renewal of her contract were a pretext for retaliation. *See id.*

### *Plaintiff's Prima Facie Case of Retaliation*

To establish a prima facie case of retaliation under Title VII, Plaintiff must show that: (1) she engaged in protected opposition to discrimination; (2) she suffered an adverse action from her employer; and (3) there was a causal connection between her protected activity and her employer's adverse action. *Sauers v. Salt Lake County*, 1 F.3d 1122, 1128 (10th Cir. 1993).

Defendants do not dispute that Plaintiff can show the first two elements of a prima facie case, but argue that she cannot show a causal connection between her complaints about Leppelman (activities that Defendants concede constituted "protected opposition to discrimination") and Defendants' decision not to renew her contract (conduct that Defendants concede was "an adverse employment action"). (Doc. 74 at 10-11). They note that Title VII plaintiffs typically rely on "temporal proximity" between the protected activity and the adverse employment action in order to raise an inference of causation. *Id.* at 12 (citing *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) ("We have held that a one and one-half month period between protected activity and adverse action may, by itself, establish

13

causation. By contrast, we have held that a three-month period, standing alone, is insufficient to establish causation.")). According to Defendants, no such proximity exists in the instant case, where the relevant "date of [Plaintiff's] protected activity" is November 12, 2006 – the date she first wrote to Cleveland about Leppelman – about six months before Defendants decided not to renew her contract. Defendants do not cite any authority for the proposition that, where a Title VII plaintiff engages in the same protected activity repeatedly, only the first date is relevant for purposes of calculating the time period between protected activity and adverse action.

Plaintiff responds that the extent of her protected opposition to discrimination was not limited to the first letter she wrote to Cleveland in November 2006, and notes that she reiterated her concerns about Leppelman's treatment of her in letters and/or meetings on January 14, 2007, March 14, 2007, and April 14, 2007 (less than one month before Cleveland informed her that her contract would not be renewed). Plaintiff does not offer any additional evidence tending to justify an inference of a retaliatory motive.

Accepting Defendants' position that Plaintiff's complaints about Leppelman constituted protected opposition to discrimination,[3] the Court agrees with Plaintiff that, under Tenth Circuit precedent, the temporal proximity between the date of Plaintiff's final complaint about Leppelman (April 14, 2007) and the date she learned her contract was not being renewed (May 10, 2007), is, by itself, sufficient to establish causation for purposes of the instant motion. *See O'Neal*, 237 F.3d at 1253. Accordingly, the Court finds that Plaintiff has set forth a prima facie

---

[3]The Court notes that none of the documents that, according to Defendants, partly constitute a "series of protected conduct" specifically describe allegations of racial discrimination. *See, e.g.,* Doc. 74 Ex. F (November 12 letter to Cleveland making no reference to race or allegation of racial discrimination); *id.* Ex. G (January 14 letter stating that "Leppelman made offensive comments to me on a personal and a professional level," without further elaboration).

case of retaliation.

### *Legitimate Reasons for Non-Renewal and Plaintiff's Case for Pretext*

Next, Defendants argue that they are nevertheless entitled to summary judgment because Plaintiff cannot meet her burden of showing that their legitimate, non-discriminatory reasons for declining to renew her employment – namely, complaints from Puesta del Sol staff about Plaintiff and Plaintiff's failure to meet the goals set forth in her Growth Plans – are merely an offered pretext for the decision to retaliate against her.  As with her discrimination claim, Plaintiff contends that evidence of pretext can be seen in Cleveland's acceptance of Leppelman's evaluations of Plaintiff, despite Plaintiff's having put her on notice that Leppelman cancelled most of their meetings and made unspecified "false statements" about her.  *See supra* at 9-10.  For the reasons set forth above, the Court finds that Plaintiff fails to show that Defendants' cited reasons for the non-renewal are unworthy of belief.  Again, the relevant inquiry is not whether Cleveland was "wise, fair or correct" in giving weight to Leppelman's opinions, but whether she acted in good faith on her honest belief that the deficiencies noted in the Growth Plans existed and that the complaints about Plaintiff from the teachers who worked under her had merit.  *See Green,* 501 Fed. Appx. at 732 (10th Cir. 2012) (quotation omitted).  Because Plaintiff does not offer any evidence tending to show pretext, the Court finds that summary judgment should be granted on her retaliation claim.

### IV.    Equal Protection Claim Against RRPS and Cleveland

The Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  Plaintiff brings a claim for violation of the equal protection clause against RRPS and Leppelman under 42

U.S.C. § 1983, which provides a cause of action for denial of the equal protection of the laws by an individual acting under color of state law.  *See West v. Atkins,* 487 U.S. 42, 48 (1988).

Plaintiff's equal-protection claim against RRPS further "requires that [an RRPS employee's] discriminatory conduct be representative of an official policy or custom of the institution." *Rost v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1124 (10th Cir. 2008) (analyzing school district's liability under the equal protection clause under municipal liability framework of *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 694 (1978)).  Thus, Plaintiff must prove: (1.) that an RRPS employee violated her rights under the equal protection clause, and (2.) that an official policy or custom was the moving force behind the constitutional deprivation.  *See Myers v. Okla. County Bd. of County Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998); *see also Bd. of County Comm'rs v. Brown,* 520 U.S. 397, 404 (1997) (plaintiff demonstrates that entity was the "moving force" behind the injury alleged by showing "a direct causal link between the [district's] action and the deprivation of federal rights.").  In the case where a plaintiff seeks to impose entity liability on a school district on the basis of a single incident, the plaintiff must show the particular illegal course of action was taken pursuant to a decision made by a person with final authority to establish official district policy with respect to the action ordered.  *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 481-84 (1986).

### *Whether an RRPS Employee Violated Plaintiff's Equal Protection Rights*

A violation of the Fourteenth Amendment right to equal protection under the laws occurs when the government treats someone differently than another individual who is similarly situated.  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  Thus, "[i]n order to assert a viable equal protection claim, [Plaintiff] must first make a threshold showing that [she was] treated differently from others who were similarly situated to [her]." *Barney v. Pulsipher*,

16

143 F.3d 1299, 1312 (10th Cir. 1998).  "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline."  *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006) (quotations omitted).  Courts considering whether two employees are similarly situated "should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees." *Id*.  In order for their disparate treatment to be relevant, similarly situated employees must have engaged in conduct of "comparable seriousness" in order for their disparate treatment to be relevant.  *Id.*  Moreover, it is not sufficient for the Plaintiff to merely allege disparate treatment among similarly situated employees; "[t]o prevail on an equal protection claim, a plaintiff must show that he or she was subjected to an adverse employment action."  *Gerald v. Locksley*, 2011 U.S. Dist. LEXIS 53469, at *70 (D.N.M., May 6, 2011) (collecting cases).

In support of the instant motion, Defendants argue that RRPS and Cleveland are entitled to summary judgment because Plaintiff fails to set forth specific evidence of disparate treatment.  They argue that while the background section of the Complaint references "other principals in the district that were not going to meet their Annual Yearly Progress (AYP) goals, who were not African-American [w]omen and who had their contracts renewed . . . Plaintiff fails to substantiate any actual principal similarly situated whose contract was renewed.."  (Doc. 74 at 6-7) (citations omitted).

Plaintiff responds by setting forth a list of eight examples of alleged equal protection violations she encountered at the hands of Leppelman and/or Cleveland.  Most of these examples are unhelpful to Plaintiff, as they either implicate only the conduct of Leppelman, despite the fact that the Court previously dismissed Plaintiff's equal protection claim against him for failure

to plead "allegations of an adverse employment action or disparate treatment" (Doc. 29 at 12); and/or do not allege disparate treatment (*see, e.g.,* Doc. 77 at 11-12) (contending that Plaintiff's equal protection rights were violated by Leppelman's cancelling weekly meetings with her and addressing her in a "loud, derogatory tone").  Indeed, Plaintiff's response contains only two allegations that Plaintiff was treated differently from similarly-situated individuals: (1) her claim that she was hired "one month later than the other non-African-American principals [in RRPS]"; and (2) her claim that Cleveland informed her in person that one reason her contract was not being renewed was that Cleveland "did not believe Plaintiff's school was going to make their AYP goals," though Plaintiff was aware of "several other schools" within RRPS that were also not going to make their AYP goals, and whose non-African-American principals "all had their contracts renewed for the 2007-2008 school year." *Id.* at 13-14.

With regard to her late hiring date, the Court finds that Plaintiff fails to set forth a triable claim for an equal protection violation.  Plaintiff does not argue, let alone attempt to demonstrate, that being hired after other new principals within RRPS constituted an adverse employment action taken against her.  Indeed, Plaintiff does not offer *any* evidence of her allegation from which a jury could find in her favor.  Plaintiff may not "rest on mere allegations or denials of his pleadings" to avoid summary judgment.  *Anderson*, 477 U.S. at 256.

With regard to Cleveland's allegedly citing Puesta del Sol's failure to make AYP goals as a factor in the non-renewal of Plaintiff's contract – a higher standard than that applied to non-African-American principals in the District – the Court previously held that "if Plaintiff is able to prove these allegations, she plausibly has a claim for equal protection relief."  (Doc. 29 at 13). Plaintiff, however, has failed to develop her claim sufficient to withstand summary judgment.  In support of her claim, she points only to her deposition testimony, which was wholly speculative

18

in nature.  Indeed, at her deposition, Plaintiff testified as to the names of the schools that, in her opinion, were not likely to have met their AYP goals for the relevant school year: "I can assume, just as any other administrator, that there would be certain schools . . . that were not going to make it based on the sheer fact that middle schools and high schools have a much more difficult time making AYP with 37 different matrixes."  (Doc. 77 Ex. 5, Townsend-Johnson Dep. at 167:7-167:12).   Plaintiff does not, however, proffer any specific evidence of the names and races of the similarly-situated principals who helmed these schools, nor any specific evidence that the schools about which she speculated failed to make their AYP goals for the 2007-2007 school year.  Thus, the Court finds that Plaintiff fails to assert a triable claim that an RRPS employee violated her equal protection rights under the Fourteenth Amendment.

Because Plaintiff does not meet the first element of a municipal-liability claim by setting forth sufficient evidence of a constitutional violation, the Court need not consider whether an official policy or custom was the moving force behind the violation.  Accordingly, the Court finds that summary judgment should be granted to both RRPS and Cleveland on Plaintiff's equal protection claim.

## CONCLUSION

Therefore, for the reasons set forth above, the Court finds that Defendants' *Motion for Summary Judgment on All Remaining Counts, Including Plaintiff's Claim for Lost Wages* (Doc. 73) is **GRANTED.**  Defendants' *Motion in Limine to Exclude Mediation Testimony* (Doc. 75) and *Motion in Limine to Exclude Some of Plaintiff's Listed Witnesses* (Doc. 84) are thus **DENIED** as moot.

_____
UNITED STATES DISTRICT COURT JUDGE